**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| TERESA R. WAGNER, | ) |
| | ) Law No. |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| vs. | ) |
| | ) |
| CAROLYN JONES, Dean | ) |
| Iowa College of Law | ) |
| (in her official and individual capacities), | ) |
| | ) |
| Defendant. | ) |

Comes now Plaintiff, Teresa R. Wagner (hereinafter referred to as "Plaintiff Wagner"), by and through her attorneys, Katz, Huntoon & Fieweger, P.C., and for her Complaint against Defendant Dean Jones of the Iowa College of Law, states as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action of employment discrimination against a Defendant state actor, the Dean of the College of Law at the University of Iowa. Plaintiff contends that Defendant repeatedly refused, and continues to refuse, to hire her as an Instructor of Legal Writing for illegal reasons: because she and the voting law faculty do not approve of her political views and affiliations. This motive behind a refusal to hire is in violation of plaintiff's First Amendment rights.

2. Plaintiff also contends that Defendant violated standards of fairness and impartiality in hiring procedures with respect to plaintiff, and therefore also violated the Constitution's Fourteenth Amendment Due Process and Equal Protection Clauses.

3. As a result of these violations, Plaintiff Wagner has suffered loss of income, loss of employment benefits and emotional damages.

4. Plaintiff Wagner hereby requests that Defendant compensate her for such lost income, lost benefits and emotional damages, and also hire her in the position, which she was illegally denied.

Case 3:09-cv-00010-JEG-RAW   Document 1   Filed 01/20/09   Page 2 of 10

## JURISDICTION AND VENUE

5. This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed to all of its citizens, including plaintiff, by the United States Constitution, specifically, the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. This cause of action arose in Johnson County, Iowa. Therefore, venue in this Court is proper under 28 U.S. C. § 1391 (b).

## JURY DEMAND

7. Plaintiff Wagner hereby respectfully demands a jury trial pursuant to 42 U.S.C § 1983a.

## THE PARTIES

8. Plaintiff Wagner is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the State of Iowa, Johnson County.

9. Plaintiff Wagner is a registered Republican in Johnson County, and has advocated conservative views, in particular against abortion and euthanasia, matters of public concern, and has been affiliated with conservative public policy organizations.

10. Defendant Dean Carolyn Jones is sued in both her individual and official capacities, as state actor and employer. She is and was at all times mentioned herein, an adult citizen of the United States and Dean of the Iowa College of Law, the University of Iowa, a public university supported by the federal and state tax dollars of Iowans of all political persuasions.

11. Defendant Jones, on the recommendation of the voting law faculty, was and remains responsible for offering positions to candidates who apply for faculty openings. Such positions include "Instructor" and "Adjunct" as well as tenure-track professorships.

12. Defendant Jones is a registered Democrat in Johnson County, Iowa, as were at least 46 of the approximately 50 faculty members in the Iowa College of Law who are entitled to vote on faculty appointments.

13. The Iowa College of Law has only one registered Republican among its voting faculty members. He was hired over 20 years ago. See attached Exhibit 1.

2

## STATEMENT OF FACTS

**Background & Plaintiff's Qualifications**

14.   Plaintiff Wagner graduated from the Iowa College of Law in May of 1993, and was admitted to the Iowa Bar that summer.

15.   Plaintiff Wagner practiced law as an associate attorney in Iowa City, Iowa, from 1993 to 1995, where she focused on litigation.

16.   In 1995, Plaintiff Wagner moved with her husband to Washington, D.C., where she worked for two conservative organizations: The National Right to Life Committee ("NRLC, Inc."), which opposes abortion and euthanasia, and the Family Research Council ("FRC"), known primarily for its conservative social views.

17.   These organizations appear on Plaintiff Wagner's resume, and were therefore affiliations known to Dean Jones and voting faculty at the Iowa College of Law, along with Plaintiff's credentials (set forth below).

18.   Several voting faculty members at the Iowa College of Law oppose conservative views and have advocated for legal abortion, legal euthanasia, gay marriages and other liberal causes. See copies of C.V.s and e-mails attached to this Complaint as Exhibit 2 ("Emancipation as Freedom in *Roe v. Wade*;" "A Tribute to Justice Harry Blackmun"), Exhibit 3 ("In Support of Euthanasia"), Exhibit 4 ("Litigating for Lesbian and Gay Rights;" "Lesbian Perspective, Lesbian Experience & the Risk of Essentialism"), and Exhibit 5 ("WE WON IN CALIFORNIA").

19.   As Counsel to Family Research Council, Plaintiff Wagner authored and edited numerous legal and policy publications, as well as friend-of-the court legal briefs to federal appellate courts, including the United States Supreme Court.

20.   From 1997 to 1999, Plaintiff Wagner also worked as an Adjunct Professor of Law in the Legal Writing and Research program of the George Mason School of Law in Fairfax, Virginia. In this position, she lectured first and second year law students on the fundamentals of memorandum and brief writing.  She also met with students individually to discuss their written work, and she coached and graded them on their appellate advocacy skills (written briefs and oral argument).

21.   Plaintiff Wagner also taught a graduate level course on the law and medical ethics in the fall of 2003 at the Notre Dame Graduate School of Christendom College in Alexandria, Virginia. In this position, she supervised students writing graduate level seminar papers.

22.   In 2002, Plaintiff Wagner was offered (but declined) a tenure-track law professor position at Ave Maria School of Law, a conservative law school in Ann Arbor, Michigan. See

September 8, 2008 letter from Eugene Milhizer, Acting Dean of Ave Maria School of Law, attached to this Complaint as Exhibit 6.

23. In 2001, 2003 and 2008, respectively, Plaintiff Wagner served as Editor of three books:

  1) *Fifty Years Later: The United Nations' Universal Declaration of Human Rights* (University Press of America, 2001);

  2) *Back to the Drawing Board: The Future of the Pro-Life Movement* (St. Augustine's Press, 2003); and

  3) *The End of Reciprocity: Terror, Torture and the Law of War* (forthcoming from Cambridge University Press).

24. As a law professor and an editor, Plaintiff Wagner has worked with novice, intermediate and non-English speaking writers as well as with distinguished published authors, the latter including nationally syndicated columnist Nat Hentoff, Congressman Christopher Smith, and former Member of Parliament Lord David Alton, and human rights activist Harry Wu.

25. Plaintiff Wagner has also edited the written work of several law professors including Charles Rice of the University of Notre Dame School of Law, Kathryn Balmforth and Richard Wilkins of Brigham Young School of Law, and Mark Osiel and David Baldus of the University of Iowa College of Law. Professor Baldus has written a letter of recommendation for Plaintiff Wagner concerning her qualification for the Writing Instructor position, a copy of which is attached as Exhibit 15.

**The Writing Instructor Position and Application Process**

26. Plaintiff Wagner moved from the Washington, D.C. area back to Iowa with her husband and four children in the summer of 2006.

27. In August 2006, Plaintiff Wagner was hired as part-time professional staff at the Iowa College of Law Writing Resource Center. The voting faculty of the law school did not participate in this hiring decision.

28. In the fall of 2006, Plaintiff Wagner learned that the law school was seeking to hire two (2) full-time Writing Instructors.

29. The job announcement/description for this position is attached as Exhibit 7; it lists one qualification, that, "prior successful law school teaching is strongly preferred."

30.  Plaintiff Wagner applied for one of the two full-time Writing Instructor positions in October 2006. Her cover letter is attached to this Complaint as Exhibit 8.

**First Interview**

31.  Professor Mark Janis, Chair of the Faculty Appointments Committee, received Plaintiff Wagner's cover letter and application and invited her to interview with the Committee on November 7, 2006. See copies of e-mails, attached to this Complaint as Exhibits 9 & 10.

32.  Chair Janis requested that Plaintiff Wagner bring her law school transcript and class evaluations to the November 2006 interview, and Plaintiff did. See copy of letter, attached to this Complaint as Exhibit 11.

33.  After the November 2006 interview and after the Committee had seen Plaintiff Wagner's transcript, Chair Janis invited Plaintiff for a second, full-day interview, which required a formal presentation to all voting faculty on how Plaintiff would teach a legal writing class. See copy of Janis e-mail, attached to this Complaint as Exhibit 12.

**Second Interview**

34.  In December 2006, law professor Jon Carlson replaced Eric Andersen as Associate Dean of the Iowa College of Law.

35.  In January 2007, Associate Dean Carlson advised Plaintiff to conceal her affiliation with Ave Maria School of Law from voting faculty members, prior to her faculty interview.

36.  Plaintiff Wagner had her full-day interview which was videotaped by the law school on January 24, 2007; seven faculty members complimented her on an excellent faculty presentation.

**First Refusal to Hire: full-time Instructor**

37. On January 26, 2007, Faculty Chair Janis e-mailed Plaintiff that the voting faculty would offer one full-time Writing Instructor position to another candidate.

38.  Chair Janis asked Plaintiff Wagner if she would consider an Adjunct Professor position, which offers less than one-third the salary of full-time Instructor positions. See copy of e-mail attached hereto as Exhibit 13 and incorporated herein.

39.  Plaintiff Wagner e-mailed in response that she would consider such an appointment.

40. Associate Dean Carlson informed Plaintiff Wagner that Professor Randy Bezanson had been the one to speak against her appointment as the Writing Instructor during the faculty appointments meeting.

41. Professor Bezanson was a law clerk to former United States Supreme Court Justice Harry Blackmun, author of *Roe v. Wade*, the Supreme Court decision which legalized abortion and which Plaintiff Wagner's career has protested. Professor Bezanson was Justice Blackmun's law clerk during the term that *Roe v. Wade* was written. See copy of page from law school's website, attached as Exhibit 2.

42. Professor Bezanson has written in favor of abortion and *Roe v. Wade* as well as tributes to Justice Blackmun. See copies of CV pages attached to this Complaint as Exhibit 2.

43. Associate Dean Carlson informed Plaintiff Wagner that Professor Bezanson had not liked Plaintiff's faculty presentation. He had also mentioned her class rank and Grade Point Average (GPA) as alleged disqualifying factors for the first time.

44. Plaintiff Wagner graduated from the Iowa College of Law "with distinction;" the law school has two faculty members on staff who graduated with this same honor.

45. The job announcement for the Writing Instructor position did not specify a class rank or grade point average as a qualification for the position, only prior successful law school teaching as a prerequisite for the job. See Exhibit 7.

**Second Refusal to Hire: Rejected for Part-Time Adjunct Position**

46. On March 23, 2007, then Associate Dean Carlson informed Plaintiff Wagner that the law faculty had voted against appointing Plaintiff Wagner as an Adjunct Writing Instructor.

47. Associate Dean Carlson informed Plaintiff Wagner that Professor Bezanson had again spoken out against her candidacy and that a minority of voting faculty can block appointments.

48. The law faculty had hired three Writing Instructor Adjuncts with no prior law school teaching experience, including one who had just graduated from law school, Steven Moeller.

49. Steven Moeller was a research assistant for Professor Randy Bezanson.

50. After she was rejected for the second time, Associate Dean Carlson informed plaintiff that she should no longer apply for open full-time or Adjunct Writing Instructor positions.

40. Associate Dean Carlson informed Plaintiff Wagner that Professor Randy Bezanson had been the one to speak against her appointment as the Writing Instructor during the faculty appointments meeting.

41. Professor Bezanson was a law clerk to former United States Supreme Court Justice Harry Blackmun, author of *Roe v. Wade*, the Supreme Court decision which legalized abortion and which Plaintiff Wagner's career has protested. Professor Bezanson was Justice Blackmun's law clerk during the term that *Roe v. Wade* was written. See copy of page from law school's website, attached as Exhibit 2.

42. Professor Bezanson has written in favor of abortion and *Roe v. Wade* as well as tributes to Justice Blackmun. See copies of CV pages attached to this Complaint as Exhibit 2.

43. Associate Dean Carlson informed Plaintiff Wagner that Professor Bezanson had not liked Plaintiff's faculty presentation. He had also mentioned her class rank and Grade Point Average (GPA) as alleged disqualifying factors for the first time.

44. Plaintiff Wagner graduated from the Iowa College of Law "with distinction;" the law school has two faculty members on staff who graduated with this same honor.

45. The job announcement for the Writing Instructor position did not specify a class rank or grade point average as a qualification for the position, only prior successful law school teaching as a prerequisite for the job. See Exhibit 7.

**Second Refusal to Hire:  Rejected for Part-Time Adjunct Position**

46. On March 23, 2007, then Associate Dean Carlson informed Plaintiff Wagner that the law faculty had voted against appointing Plaintiff Wagner as an Adjunct Writing Instructor.

47. Associate Dean Carlson informed Plaintiff Wagner that Professor Bezanson had again spoken out against her candidacy and that a minority of voting faculty can block appointments.

48. The law faculty had hired three Writing Instructor Adjuncts with no prior law school teaching experience, including one who had just graduated from law school, Steven Moeller.

49. Steven Moeller was a research assistant for Professor Randy Bezanson.

50. After she was rejected for the second time, Associate Dean Carlson informed plaintiff that she should no longer apply for open full-time or Adjunct Writing Instructor positions.

**Destruction of Tape**

51. The law school destroyed the videotape of Plaintiff's January 24, 2007 faculty presentation in April 2007, within one month after refusing to hire her as an Adjunct Writing Instructor.

**The Applicant Hired in Full-Time Writing Instructor Position**

52. The candidate to whom the law school offered the full-time Writing Instructor position was Matt Williamson.

53. Matt Williamson had no prior law school teaching experience before being hired as an Adjunct at the Iowa College of Law.

54. Matt Williamson had never practiced law.

55. Matt Williamson had no published works.

56. Matt Williamson admitted to Plaintiff and to others that he was not qualified to be a Writing Instructor and offered to resign after his first semester of full-time teaching. He did resign after his second semester.

57. Matt Williamson frequently and openly stated, in speech and in writing, that he disliked social conservatives, and "hates" "Republicans" and "right wingers." See copy of Matt Williamson e-mail, attached to this Complaint as Exhibit 14.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE FIRST AMENDMENT

58. Plaintiff hereby incorporates paragraphs 1 through 57.

59. The First Amendment of the United States Constitution guarantees individuals the right to associate and express themselves on matters of public concern without fear of reprisal from their government.

60. This guarantee prohibits the government, when acting as employer, from firing, refusing to promote and / or refusing to hire citizens because of their political views or affiliations.

61. In this case, Dean Jones individually and acting on behalf of the Governmental Employer, the Iowa College of Law, has violated Plaintiff's First Amendment rights by refusing

to hire her because of her socially conservative political views, associations and expressions, and is using plaintiff's presentation and class rank or grade point average as a pretext to conceal improper motive.

## COUNT II:
## VIOLATIONS OF DUE PROCESS & EQUAL PROTECTION

(i)

### Moving the Goal Posts

62. Plaintiff Wagner hereby incorporates paragraphs 1 through 61.

63. The essential guarantee of the Due Process Clauses of the United States Constitution is that of fairness: Government processes must be fair and impartial.

64. When the government acts as a prospective employer, due process forbids it from changing a job description during the hiring process (or "moving the goal posts after the ball has been kicked").

65. In this case, the law school created a job prerequisite, class rank, and grade point average, after it drafted the job announcement and after it had received applications, including Plaintiff Wagner's.

(ii)

### Arbitrary and Capricious Conduct

66. Plaintiff Wagner hereby incorporates paragraphs 1 through 65.

67. The Due Process and Equal Protection Clauses also prohibit arbitrary and capricious governmental decision making in hiring, or applying one standard for some applicants and another standard for others.

68. In this case, the law school accepted a "with distinction" class rank for some faculty, but purports to have found that same class rank unacceptable for Plaintiff.

(iii)

### Neutral and Detached Decision Makers

69. Plaintiff hereby incorporates paragraphs 1 through 68.

70. To ensure that governmental processes are fair and impartial, government decision makers must be neutral and detached.

71. The laws of the State of Iowa enjoin such neutrality at its public universities by requiring that their overseeing institution, the State Board of Regents, is politically balanced: The Iowa Code requires of the Board that, "Not more than five members shall be of the same political party."

72. An egregious political imbalance exists among the hiring decision-makers at the Iowa College of Law: Over 90% of its voting faculty are registered Democrats, including several whose political views are directly adverse to those held by the Plaintiff.

73. As a result, Plaintiff Wagner was deprived of her due process and equal protection rights to "neutral and detached" decision-makers in the selection of full-time and Adjunct Writing Instructor.

(iv)

**Sound Hiring Procedures**

74. Plaintiff hereby incorporates paragraphs 1 through 73.

75. Fundamental fairness requires that hiring procedures be sound and sensible.

76. Procedures allowing a minority of faculty members to "block" appointments are of questionable fairness, since they allow political prejudice and bias to interfere.

**PRAYER**

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant in her official and individual capacities for compensatory damages in an amount equal to her past lost income and lost benefits in an amount as proved at trial, emotional distress damages and injunctive and equitable relief, including placement in the full-time Writing Instructor's position or in lieu thereof front pay.

Plaintiff also requests recovery of her costs, expenses, and attorney's fees in accordance with 42 U.S.C. § 1983, 1983a and § 1988.

Plaintiff also prays for such other and further relief as this Court deems just and proper.

                KATZ, HUNTOON & FIEWEGER, P.C.


        By: /s/Stephen T. Fieweger
            Stephen T. Fieweger (AT0002490)
            John F. Doak (AT0002143)
            Peter C. Fieweger (AT0002491)
            1000 - 36th Avenue
            P.O. Box 950
            Moline, IL  61266-0950
            Telephone:  309-797-3000
            Fax:  309-797-2167
            Email:  sfieweger@katzlawfirm.com

            Attorneys for Plaintiff
            Teresa R. Wagner

s:\wp\worddoc\14512001.01C